BERRÍOS, DEMANDANTE Y APELANTE, v. EL MUNICIPIO DE
JUNCOS, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de Humacao
en pleito sobre indemnización de daños y perjuicios.

No. 2544.—Resuelto en julio 20, 1922.

ABOGACÍA—FISCALES—EJERCICIO DE LA ABOGACÍA.—No es contrario al espíritu de
la Ley de marzo 9, 1905, que un municipio sea representado en un pleito
civil, en bien de los intereses públicos y sin que medien honorarios, por el
fiscal del distrito.

EDIFICIO RUINOSO—DEMOLICIÓN—MUNICIPIO.—Si una casa amenaza ruina, el pro-
pietario está obligado a su demolición o a ejecutar las obras necesarias para
evitar su caída; y si así no lo hiciere, la autoridad municipal podrá demo-
lerla a costa del propietario.

ID.—ACUERDO FUNDADO—NOTIFICACIÓN AL DUEÑO.—El municipio demandado en
este caso acordó, dado el estado ruinoso de cierta casa, conceder a su dueño
dos meses para repararla o demolerla, con la prevención de que si así no lo
hacía, procedería a verificar la reparación o demolición por cuenta y riesgo
del dueño. El propietario fué notificado y nada hizo. Transcurrió el plazo
con exceso y el municipio demolió la casa. Se resolvió: que el municipio
constituyendo la casa como se demostró que constituía un estorbo público,
procedió dentro de sus facultades, no obstante haber cambiado en el momento
de la demolición de dueño la casa, a virtud de un contrato privado de venta
del cual no tuvo conocimiento el municipio.

Los hechos están expresados en la opinión.

Abogado del apelante: Sr. F. González.

Abogados del apelado: Sres. José E. Figueras, Fiscal y
F. Piñero.

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del
tribunal.

José A. Berríos demandó al Municipio de Juncos en recla-
mación de daños y perjuicios. Alegó en su demanda que en
y antes de enero 8 de 1919 era dueño de una casa de made-
ras, radicada en Juncos, calle de ''Muñoz Rivera,'' marcada
con el número 10, y que en dicho día solicitó del municipio
permiso para reparar dicha casa y le fué concedido, habiendo
obtenido además el 4 de febrero de 1919 el consentimiento
del Departamento Insular de Sanidad para verificar la repa-
ración; que eso no obstante y sin que fuera notificado, su
casa fué vendida en pública subasta en cumplimiento de un

acuerdo de 13 de febrero de 1919 del Concejo Municipal de Juncos; que ningún tribunal dictó sentencia decretando dicha venta y que por razón de ella sufrió perjuicios que fija en seiscientos dólares.

El municipio demandado compareció por medio del fiscal del distrito y contestó la demanda negando los hechos que le perjudicaban y alegando como materia de defensa que el demandante no era dueño de la casa en cuestión y sí Juana Ortiz de Renta. El demandante se opuso a que el demandado compareciera representado por el fiscal y la corte declaró sin lugar la oposición. Se celebró la vista y el pleito se falló finalmente en contra del demandante. En su opinión la corte sentenciadora se expresó así:

"De la prueba aparece que el inmueble objeto de la demanda amenazaba ruina y constituía un *public nuisance*. Se ha probado también que dicho inmueble fué propiedad de Juana Ortiz de la Renta y que de su adquisición por el demandante nunca tuvo conocimiento el municipio; y apareciendo asimismo de la prueba que dicho municipio notificó a Juana Ortiz de la Renta que iba a proceder a la demolición del expresado inmueble, y siendo ello así que no se ha demostrado que el municipio actuara de mala fe, resuelve la corte que debe desestimar la demanda presentada."

No conforme el demandante con la sentencia dictada, apeló y señaló en su alegato cuatro errores, cometidos así: 1. Al permitir la intervención del fiscal; 2, al aplicar el artículo 396 del Código Civil; 3, al declarar que la casa constituía un *public nuisance,* y 4, al fallar en contra de la ley.

1. Examinemos el primer error. Sostiene el apelante que el artículo 51 del Código de Enjuiciamiento Civil determina que la comparecencia ante las cortes de distrito, deberá hacerse por medio de abogado debidamente autorizado para ejercer su profesión, y que como por la Ley de 9 de marzo de 1905, titulada "Ley prohibiendo al Fiscal de la Corte Suprema, fiscales de las cortes de distrito y jueces municipales el ejercicio de la abogacía," dichos funcionarios sólo

pueden postular como defensores de "El Pueblo de Puerto Rico o de cualquier funcionario público," es claro que el fiscal no pudo intervenir en el litigio.

La idea de la Ley de 1905 citada, fué impedir que los fiscales, que deben ser abogados debidamente autorizados para ejercer, se dedicaran a asuntos particulares. Es cierto que el municipio no es El Pueblo de Puerto Rico, ni un funcionario público y que por tanto dentro de los términos de la ley no está obligado el fiscal a representarlo, pero un municipio es una corporación pública creada por el gobierno para fines políticos, o como también se ha definido, una incorporación de personas, residentes en un lugar particular, o conectadas con un particular distrito, autorizada para dirigir su gobierno civil local, (véase 2 *Bouvier's Law Dictionary,* 2269), y no es contrario al espíritu de la ley que sea representado, en bien de los intereses públicos, sin que medien honorarios, por el fiscal del distrito, si éste pudiere hacerlo sin detrimento de sus deberes primordiales.

2. Los otros errores señalados pueden estudiarse conjuntamente. Para ello creemos conveniente comenzar por hacer un resumen de la prueba practicada.

Consistió la del demandante en tres documentos y en su propia declaración y la del demandado en una certificación y dos declaraciones de testigos.

El primer documento del demandante fué una certificación que contiene copia del escrito presentado al Concejo Municipal de Juncos pidiendo permiso para reparar la casa No. 12 de la calle "Muñoz Rivera"; el segundo, otra certificación que transcribe el acuerdo del concejo concediendo el permiso para reparar la dicha casa número doce, y el tercero, una autorización del Departamento de Sanidad para reparar la casa número diez de la calle "Muñoz Rivera," de Juncos.

Declaró el demandante, en resumen, que era dueño de la casa No. 10 por haberla comprado a Juana Ortiz en cien

dólares, unos meses antes del 8 de enero de 1919, sin que me-
diara documento escrito; que la casa fué rematada por el
municipio sin su intervención y sin que nada se le notificara,
y que ha perdido los cien dólares que pagó, tres o cuatro-
cientos dólares en que calcula los beneficios que dejó de ob-
tener y doscientos dólares que valía el derecho al usufructo
del solar.   Admitió el demandado que cuando compró la casa
"estaba desocupada porque la Sanidad lo había ordenado y
la mandó clausurar."

La certificación aportada por el demandado contiene co-
pia del acuerdo del Concejo Municipal de Juncos, aprobado
por el alcalde, de 14 de noviembre de 1917.   De él aparece
que el alcalde se dirigió al concejo, a fin de que dicho orga-
nismo pudiera dar cumplimiento a lo que dispone la sección
27 de la ordenanza municipal sobre construcciones, rectifi-
caciones y reparaciones de edificios, aprobada el 22 de di-
ciembre de 1911, exponiéndole que en el pueblo existían va-
rias casas ruinosas mandadas cerrar por el Departamento
de Sanidad que afeaban el ornato, eran un criadero de mi-
crobios, un refugio de vagabundos y un peligro para el ve-
cindario, y que debía concederse a sus dueños un plazo para
que procedieran a repararlas.   Basándose en el escrito del
alcalde el concejo acordó que de conformidad con la sección
27 de la ordenanza citada "se notifique a los señores Marcial
Blanco, Juana Ortiz, Modesto Martínez o sucesión de don
Agustín Collazo, Amalio Pereira y Domingo Matanzo, que
en el improrrogable plazo de dos meses, a contar desde el
día que se les notifique el presente acuerdo, deberán proce-
der al derribo o a la reparación de sus respectivas casas,
que han sido clausuradas en esta población por orden del
Departamento de Sanidad, según les fué notificado oportu-
namente por el inspector del ramo, debiendo presentar para
ello al concejo las peticiones correspondientes acompañadas
de sus planos respectivos; y de no verificarse dentro del
plazo fijado, la administración procederá a verificar por

cuenta y riesgo de los dueños de las casas expresadas la reparación o demolición de ellas según procediese, a juicio del alcalde; *Disponiéndose,* que si la persona a quien perteneció la casa derribada por virtud del presente acuerdo, no pudiese por cualquier circunstancia reedificarla dentro del plazo fijado, el solar en que dicha casa estuvo será dado en usufructo al que lo pidiere para fabricar en él, siempre que la petición sea hecha de conformidad con lo que disponen las ordenanzas municipales sobre construcciones.''

El acuerdo fué notificado a los propietarios, entre ellos Juana Ortiz, el 13 de diciembre de 1917.

El testigo Varona dijo que ''conoce la casa número 10 de la calle ''Muñoz Rivera'' del pueblo de Juncos, que pertenecía a doña Juana Ortiz y fué demolida por el municipio; que conoció y conoce a doña Juana Ortiz de la Renta.'' La otra declaración es más amplia. La prestó José Barreras, Alcalde de Juncos en 1917 y actual Comisionado de Servicio Público. Se expresó así:

''Conoce a Juana Ortiz de la Renta hace muchos años y tenía y en su concepto ha tenido siempre una casa en la calle de 'Muñoz Rivera' marcada con el número diez, la cual hoy no existe; que el Concejo Municipal de Juncos acordó respecto a varias casas que estaban en mal estado dar un plazo de cincuenta días para que las reedificaran o las destruyeran y doña Juana Ortiz de la Renta no cumplió ese acuerdo.; que doña Juana Ortiz de la Renta era la dueña de esa casa y firmó el documento donde se le avisaba que debía reedificar; que esa casa se destruyó por estar en estado ruinoso y la Sanidad también había mandado a clausurar la casa; que a su juicio la casa estaba ruinosa porque había sido clausurada por el Departamento de Sanidad varios años antes y naturalmente una casa así clausurada constituye una amenaza pública y por otra parte la falta de vigilancia de la misma casa sea por el encargado o por el dueño es una casa que no produce, que está abandonada. Esa casa estaba situada en un barranco que constituye un peligro, y en ese mismo solar no puede fabricarse ninguna casa, ese solar es de pequeñas dimensiones puesto que las lluvias han ido desbarrancando considerablemente, al extremo de que en el sitio donde estaban los estantes

de la misma casa ya habían quedado en el aire y desde luego la casa amenazaba ruina, porque estaba en un barranco y al fondo del barranco queda una callecita donde hay bohíos; la casa estaba en un barranco muy alto y ese barranco es un declive y en la parte baja hay casas pequeñas que dan a una calle y desde luego si esa casa se derrumbaba podría ir rodando y de momento ir y causar daños a los habitantes de los bohíos de abajo; que cree honradamente que era necesario destruir la casa porque el tiempo ejercía su acción destructora en la casa y en el solar; que ha tenido experiencia como oficial de sanidad y como médico y la casa que dijo antes llevaba varios años de ·clausurada y esas casas en los pueblos, que no tienen el cuidado de nadie se convierten en letrinas públicas y no digo esa que estaba en los extramuros, sino casas que han tenido en el centro de la ciudad, puertas que se caen y dan paso a los desocupados que no tienen nada que. hacer, para convertir la casa en le-, trina; que esa casa tiene el número diez y al lado hay una también clausurada que tiene el número doce y es de la sucesión de Antonio Mujica, que siempre ha creído que la casa número diez era de doña Juana Ortiz; que el señor Berríos no le avisó al declarante que hubiera comprado esa casa y que la casa demolida fué la número diez. Repreguntado por el abogado del demandante declaró que la casa número diez colinda por el frente con la calle 'Muñoz Rivera' por el norte con casa de la sucesión de Antonio Mujica, por el sur con otro propietario cuyo nombre ignora y por detrás con el corral de la misma casa de la señora Juana Ortiz y los bohíos que están fabricados en la otra calle;. que esa casa que ha descrito es de Juana Ortiz y se está refiriendo a la misma casa que se destruyó y a la que se refieren los documentos que presentó el señor abogado.   Examinado por el juez declaró: que en la carta o escrito que presentó el demandante al municipio solicitaba permiso para reparar la casa número doce y que la casa número doce es contigua a la número diez y colinda por el norte con una casa que no conoce al propietario, por el sur con casa de Juana Ortiz de la Renta y por el oeste con solares del municipio; que existe la casa número doce pero está clausurada hace muchos años, porque está ruinosa; que esa casa también se va a demoler, es de una sucesión ·y estaban en asunto de la tramitación de la testamentaría y realmente no había con quien entenderse pero también se va a seguir igual procedimiento.''

Esa fué toda la prueba practicada.   Insiste mucho el apelante en que su acción se basa no en la demolición de la casa,

sino en la venta de la misma en pública subasta. Sólo en la declaración del propio demandante se habló de la venta. La prueba del demandado toda se refiere a la demolición y el conflicto fué resuelto por la corte de distrito en favor del demandado, sin que se haya demostrado error.

No hay conflicto con respecto a que la casa demolida fué la número 10 de la calle "Muñoz Rivera," de Juncos. Tampoco lo hay en que dicha casa perteneció a Juana Ortiz. El demandante declaró que la compró en cien dólares cuando estaba ya clausurada por la Sanidad y nada producía. E interpretando racionalmente la prueba necesariamente debe concluirse que la compró también después que había vencido el término que se concedió a la propietaria y que ésta admitió sin protesta, para repararla, con la advertencia de que si no lo hacía, el municipio procedería por cuenta y riesgo del dueño a repararla o demolerla.

¿Tuvo facultad el municipio para adoptar y llevar a la práctica tal acuerdo? ¿Pudo cumplirse lo acordado después de vendida la casa por el propietario notificado sin que se hiciera nueva notificación al nuevo propietario?

El artículo 396 del Código Civil Revisado, dice:

"Art. 396.—Si un edificio, pared, columna o cualquiera otra construcción amenazase ruina, el propietario estará obligado a su demolición, o a ejecutar las obras necesarias para evitar su caida.

"Si no lo verificase el propietario de la obra ruinosa la autoridad podrá hacerla demoler a costa del mismo."

Ese artículo es igual al 389 del Código Civil Antiguo citándose por Scaevola como precedentes legales del mismo la Part. 3ª., Tít. XXX, Ley 15, y el Lib. VII, Tít. XXXII, Ley 2ª., de la Nov. Recop. y comentando el propio Scaevola el precepto, se expresa, en parte, así:

"El deber que el segundo párrafo mencionado señala a las autoridades constituye uno de los más importantes capítulos de la llamada 'policía municipal', y está reconocido además en sentencia del Tribunal Supremo fecha 15 de junio de 1877, y terminantemente,

entre otras, en las reales órdenes fechas 13 de marzo, 22 de julio
y 18 de diciembre de 1880, que interpretan, con unánime criterio,
la doctrina sentada por los artículos 72 y 73 de la Ley Municipal
vigente, pues, efectivamente, en el número primero de aquél se dice
que es de la exclusiva competencia de los ayuntamientos el estable-
cimiento y creación de servicios municipales referentes al arreglo
y ornato de la vía pública  *  *  *  y *seguridad de las personas y
propiedades.*  En este concepto, por tanto, está indudablemente com-
prendida la obligación a que se refiere el apartado segundo que co-
mentamos.  Dedúcese de estos principios que los tribunales no están
facultados para admitir interdictos contra acuerdos de los ayunta-
mientos que compelan a los propietarios a reparar o demoler sus
construcciones ruinosas, puesto que procediendo dichas entidades ju-
rídicas, ya a instancia de los vecinos que temen el daño, o ya de
oficio, por denuncia de los arquitectos, que esto será lo más frecuente,
intervendrán en asuntos que la Ley Municipal les señala como de
su exclusiva competencia, a falta de la iniciativa individual.''

Las leyes constitutivas de los municipios han variado en
la Isla durante la nueva soberanía, pero nada se ha citado
de ellas que les impida realizar lo que antes podían llevar
a efecto en la materia de que se trata.

Califica el juez sentenciador de *public nuisance* la casa
en cuestión y ello nos lleva a examinar el caso a la luz del
derecho americano.

Según la jurisprudencia, resumida por Cyc., ''La palabra
'estorbo' (*nuisance*) significa literalmente molestia; cual-
quier cosa que produce algún mal, inconveniencia, o daño, o
que esencialmente entorpece el disfrute de la vida o de la
propiedad.

''Un estorbo es público cuando afecta los derechos disfrutados
por los ciudadanos como parte del público, esto es, los derechos que
residen en todos los ciudadanos, mientras que un estorbo privado es
cualquier cosa hecha en daño o detrimento de las tierras, heredades
o patrimonio de otra persona, que no equivalga a una invasión (*tres-
pass*); así, cualquier uso injustificado, irrazonable, o ilegal, por una
persona, de su propiedad, mueble o inmueble, que cause daño a otra,
constituye un estorbo privado.  De esta suerte, se observará que la

diferencia entre los estorbos públicos y privados no depende de la naturaleza del acto, sino del hecho de si afecta al público en general o meramente a algún individuo o individuos en particular, de modo que el mismo acto o estructura puede ser un estorbo público y al mismo tiempo un estorbo privado en cuanto a una persona a quien le causa un daño especial distinto del daño inferido al público en general; mientras que, de otra parte, el hecho de que un estorbo cause daño a un gran número de personas no lo convierte en un estorbo público, cuando el daño es a la propiedad individual de cada persona y no al público en general como tal." 29 Cyc. 1152–53.

Cita la obra un gran número de casos particulares que han sido considerados por las cortes como estorbos públicos. Entre ellos aparece el que sigue que guarda relación con este pleito:

"Una estructura que es dedicada a tales usos, o que ha sido abandonada a un estado tal de ruina y dilapidación, que la hacen peligrosa para los viandantes o para el público, constituye un estorbo." Id. 1171.

Según la misma obra los medios legales que existen actualmente para abatir el estorbo son:

"El derecho a abolir el estorbo sin procedimiento alguno legal, una acción en equidad para la abolición del estorbo o para obtener un *injunction* contra él, una acción estatutoria por daños, o el procesamiento criminal de la persona responsable de la existencia del estorbo." 29 Cyc. 1214.

Y más adelante, basándose siempre en las decisiones de los tribunales, dice:

"Un estorbo público puede ser sumariamente abolido por las autoridades públicas, pero esta facultad debe ser ejercitada razonablemente, sin causar daños o perjuicios innecesarios a la propiedad, y se limita a la remoción de aquello que constituye el estorbo. El poder se deriva de una necesidad, y para que su ejercicio esté justificado esa necesidad debe existir. Se ha resuelto que la facultad de un funcionario municipal para abolir un estorbo público sin procedimiento legal ni mandamiento judicial está a la misma altura

que la facultad de un ciudadano. A la persona responsable de la existencia de un estorbo puede exigírsele el pago de lo gastado en su remoción o abolición.'' Id. 1218.

Analizada la prueba que se practicó en este caso, creemos que demuestra en verdad la existencia de un estorbo público.

El municipio no procedió arbitrariamente. Adoptó un acuerdo fundado y concedió un plazo de dos meses al propietario. El acuerdo fué debidamente notificado al propietario y nada hizo. El municipio quedó en condiciones de intervenir e intervino.

Es cierto que resultó que en el acto de la demolición había cambiado el dueño, pero nada constaba al municipio. No es suficiente la solicitud del nuevo dueño, para considerar notificado al municipio. El número que se dió a la casa era distinto y esto pudo inducir a error.

A todo lo que tenía derecho el demandante era a una indemnización, si es que el municipio derivó algún beneficio de la demolición. El justo valor de la casa, deducidos los gastos de la demolición, podría constituir la verdadera medida de la indemnización. Nada demuestra la prueba en este sentido. El propio demandante dijo que todo lo que había pagado por la casa era la suma de cien dólares. Los perjuicios se hacen ascender a más de quinientos dólares en la forma que hemos visto. Podría afirmarse que la cuantía se fijó para dar jurisdicción a la corte de distrito a sabiendas de que si existieron algunos perjuicios, nunca llegaron a la suma de más de quinientos dólares. Esto es tan claro no ya de la prueba, sino de las mismas alegaciones, que bien podría sostenerse que en este pleito la demanda debió desestimarse por falta de jurisdicción.

Habiendo en consideración todo lo expuesto, debe confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Aldrey, Hutchison y Franco Soto.

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.